UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BRAD R. JOHNSON, | ) | Civil Action No.: 4:08-cv-2726-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **AMENDED**[1] |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| LEWIS V. HALL; DORIS CUBIT, CPA; | ) | |
| A. ABLE, CPA; B. BAKER, CPA; and | ) | |
| C. CHARLIE, CPA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| BRAD R. JOHNSON, | ) | Civil Action No.: 4:09-cv-0102-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | |
| RANDALL BRYANT; DORIS CUBITT, | ) | |
| CPA; MALANE S. PIKE, ESQ.; MARK | ) | |
| T. HOBBS, CPA; GARY F. FORTE; | ) | |
| BOBBY R. CREECH, JR., CPA; DONALD | ) | |
| H. BURKETT, CPA; ANTHONY A. | ) | |
| CALLANDER, CPA; WENDELL | ) | |
| LUNDSFORD, PA; and JOHN F. CAMP; | ) | |
| CPA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

After obtaining his certified public accountant license from the State of Oregon, Plaintiff

---

[1]The only amendment to this Report and Recommendation is the addition of footnote 4, which was inadvertently omitted from the original Report and Recommendation.  The deadline for filing objections to this Report and Recommendation will remain September 7, 2010, as calculated from the date of filing of the original Report and Recommendation.

worked for many years as a CPA in Oregon and Illinois before becoming an accounting professor at Francis Marion University (FMU) in South Carolina in 2003. In 2006, after having signed a pleading in an unrelated lawsuit with his name followed by the designation "CPA," Plaintiff received a notice from the South Carolina Department of Labor, Licensing and Regulation Office of the Board of Accountancy (the Board) that he may be in violation of South Carolina law prohibiting the practice of accounting without a valid South Carolina CPA license. The Board issued a "Notice to Cease and Desist Unlawful Practice" (the Notice) pursuant to Title 40 of the South Carolina Code of Laws.

Plaintiff filed these two actions challenging the constitutionality of (1) the statute defining the practice of accounting, S.C. Code Ann. § 40-2-20 (Definition Statute); and (2) the statute governing the licensing of and use of the title "CPA," S.C. Code Ann. § 40-2-30 (Licensing Statute) (collectively, "the statutes at issue"). The statutes at issue were amended in June 2008.

## II.     PROCEDURAL BACKGROUND

Plaintiff's two pro se actions have been consolidated for purposes of discovery. In the lead case, 4:08-2726-TLW-TER (the first action), Plaintiff challenges the constitutionality of the statutes at issue prior to the June 2008 amendments. In the member case, 4:09-102-TLW-TER (the second action), Plaintiff challenges the constitutionality of the statutes at issue, as amended, under slightly different facts and with additional Defendants. In both cases, Plaintiff alleges causes of action for violations of his rights under the Equal Protection and Privileges and Immunities clauses of the Fourteenth Amendment, his First Amendment right to freedom of commercial speech and his rights under the dormant commerce clause. In both cases, he seeks money damages as well as a declaration that the statutes at issue are unconstitutional on their face and as applied to him.

Presently before the Court are Defendants' Motion to Dismiss (Document # 139), Plaintiff's Motion for Summary Judgment (Document # 154) and Defendants' Motion for Summary Judgment (Document # 157) in the first action and Defendants' Motion to Dismiss (Document # 104), Plaintiff's Motion for Summary Judgment (Document # 119) and Defendant's Motion for Summary Judgment (Document # 122) in the second action.

Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motions to Dismiss or the Motions for Summary Judgment could result in the Motion(s) being granted and dismissal of his Complaints. Plaintiff timely filed Responses in opposition to the Motions. In addition, both Plaintiff and Defendants have filed supplemental responses at the direction of the court. Henry McMaster, South Carolina Attorney General, has filed an Amicus Memorandum (Document # 179) in support of Defendants' argument that the statutes at issue are unconstitutional.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because the pending Motions are dispositive, this Report and Recommendation is entered for review by the district judge.

## III.    MOTIONS TO DISMISS

Defendants move to dismiss these actions pursuant to Rules 37(d) and 41(b), Fed.R.Civ.P., for Plaintiff's failure to respond to some of Defendants' discovery requests as well as his failure to attend his properly noticed deposition. Plaintiff asserts that Defendants served more than 25 interrogatories without receiving leave of court and that he notified counsel for Defendants by letter approximately two weeks prior to the date of his deposition that he would not be able to attend.

Counsel for Defendants denies receiving such a letter.

Rule 41(b), Fed.R.Civ.P, allows for the involuntary dismissal of an action "if the plaintiff fails to prosecute[2] or comply with [the rules of procedure] or a court order." In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors: (1) the degree of plaintiff's responsibility in failing to respond; (2) the amount of prejudice to the defendant; (3) the history of the plaintiff in proceeding in a dilatory manner; and, (4) the existence of less drastic sanctions other than dismissal. Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978).

The Court has authority to sanction a party for failure to comply with the discovery process pursuant to Rule 37(d), Fed.R.Civ.P. To impose sanctions under Rule 37, a court must consider four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 348 (4th Cir.2001).

In the present case, Plaintiff is proceeding pro se, so he is fully responsible for his actions. However, there is no evidence that Plaintiff has acted in bad faith. Plaintiff did not altogether fail to respond to Defendants' discovery requests. Rather, Plaintiff objected to the interrogatories as exceeding 25 interrogatories in violation of Rule 33(a), Fed.R.Civ.P. and objected to the requests for production as duplicative of previous requests. Thus, regardless of the merits of Plaintiff's objections,[3] it does not appear that they were made in bad faith. It also does not appear that

---

[2]The court notes that Plaintiff has not failed to prosecute these actions. The docket reveals that he has been active in the prosecution of these cases.

[3]The Motions to Compel filed as a result of Plaintiff's objections were withdrawn by Defendants and, thus, never addressed by the court.

Plaintiff's failure to appear for his deposition was in bad faith. Plaintiff represents that the date of the deposition was inconvenient for him because Francis Marion University students began registering for spring classes on that date and he was responsible for participating in the registration and advisement process. Plaintiff also asserts that he notified Defendants approximately two weeks prior to the scheduled deposition that he would not be available. Defendants have failed to show that Plaintiff's failure to appear for his deposition was in bad faith. Further, Defendants fail to show Plaintiff has a history of deliberately proceeding in a dilatory fashion.

Additionally, the amount of prejudice Defendants have suffered a result of Plaintiff's actions is minimal given the fact that Defendants withdrew their Motions to Compel on the issues present here. Further, the court stayed the discovery process pending a resolution of the First Amendment issues raised in the Motions for Summary Judgment. For these reasons, sanctions under Rules 41(b) and 37(d), Fed.R.Civ.P., are inappropriate. Therefore, the undersigned recommends Defendants' Motions to Dismiss be denied.

## IV. MOTIONS FOR SUMMARY JUDGMENT[4]

### A. Standard of Review

Plaintiff and Defendants filed cross Motions for Summary Judgment in both cases, asserting there are no genuine issues of material fact such that they are entitled to judgment as a matter of law

---

[4]Plaintiff and Defendants each argue for summary judgment on each of the causes of action raised by Plaintiff in his Complaints. Plaintiff's Motions for Summary Judgment have been fully briefed on these issues. However, during a hearing on March 16, 2010, the undersigned directed Plaintiff to respond only to Defendants' arguments in their Motions for Summary Judgment on the cause of action for violation of the First Amendment. Therefore, this Report and Recommendation will address Plaintiff's arguments for summary judgment on all three causes of action. However, it will address Defendants arguments for summary judgment only on the First Amendment cause of action.

on Plaintiff's claims. In analyzing the Motions, the court reviews the facts in light of Rule 56, Fed.R.Civ.P., and parses the statutes at issue before evaluating the merits of Plaintiff's claims.

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in

this rule, must set forth specific facts showing that there is a genuine issue for trial." See also

Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by

any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).

To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials

of his pleadings. Rather, the party must present evidence supporting his or her position through

"depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any."

Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th

Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B. Facts

From 1982 until 2006, Plaintiff was licensed as CPA in Oregon. Plaintiff's Verified

Statement of Facts (Verified Statement) (Document # 154-1) ¶ 2.[5] Plaintiff applied for renewal to

CPA-Inactive status on August 4, 2006. See Oregon Records (attached as Ex. 3 to Defendants'

Motion for Summary Judgment) at 0008-0009.[6] From July of 1997 until January 7, 2005, Plaintiff

was a resident of Illinois and was in the business of rendering tax consulting services as a CPA. Id.

Plaintiff continued in the business of rendering tax consulting services as a CPA with his principal

place of business in Illinois until September 1, 2006. Id. Since the 2003-04 academic year, Plaintiff

has been an Associate Professor of Accounting at Francis Marion University, with a business address

in Florence, South Carolina. Verified Statement ¶ 2. From June 2003 through January 2005,

Plaintiff resided in North Carolina. Id. From January 7, 2005, through April 22, 2007, Plaintiff

_____

[5] Unless otherwise noted, cited documents are located in the first action.

[6] It appears that the State of Oregon requires CPA licensees to renew their licenses every two years. Defendants do not dispute that Plaintiff maintained a valid, active Oregon CPA license until his licensure was changed to "inactive."

resided in South Carolina. Id. Plaintiff presently resides in North Carolina. Id. It is undisputed that Plaintiff is not licensed as a CPA by South Carolina.

On July 11, 2006, Defendant Lewis V. Hall[7] informed Defendant Doris Cubitt, Administrator for the South Carolina Department of Labor, Licensing and Regulation Office of the Board of Accountancy (the Board), that Plaintiff had signed pleadings in an unrelated lawsuit with the designation "CPA" beside his name. Cubitt Aff. ¶ 2; Ex. 1 (attached as an Exhibit to Defendants' Motion for Summary Judgment). Defendant Hall noted that "your office told me Dr. Brad R. Johnson is not a C.P.A. in South Carolina" and he requested that Defendant Cubitt "look into this." Cubitt Aff. ¶ 3; Ex. 1. In response thereto, Defendant Cubitt concluded that Plaintiff was not a licensed CPA in the State of South Carolina and issued a "Notice to Cease and Desist Unlawful Practice" to the Plaintiff on July 28, 2006. Cubitt Aff. ¶ 4; Ex. 2-3.

The "Notice to Cease and Desist Unlawful Practice" provided as follows:

It having been brought to the attention of the Board of Accountancy (hereinafter referred to as "Board") that you may have violated, and may continue to violate, one or more of the provisions of S.C. Code of Laws § 40-2-10, et. seq. (1976, as amended), to wit:

Respondent is practicing as a CPA without possessing an active Certified Public Accountant license in the state of South Carolina. In a "Certificate Of Service" The respondent is listed as
Brad R.Johnson, Ph.D, J.D., C.P.A. dated 7 July 2006.

Pursuant to S.C. Code of Laws §40-1-100, et. seq. (1976, as amended) the Board has authority to "issue a cease and desist order prohibiting a person from violating the provisions of this chapter by engaging in the practice of accounting without a permit, registration, license, or certification." Therefore, pursuant to S.C. Code of Laws §40-1-100, et. seq. (1976, as amended), the Board does hereby give notice and issue its Order as follows:

---

[7]Plaintiff voluntarily dismissed Hall as a Defendant during a hearing on March 16, 2010.

YOU ARE EXPRESSLY ORDERED to cease and desist from the performance of any act which would constitute the unlicensed practice of accounting.

AND IT IS SO ORDERED.

Cubitt Aff. ¶ 4; Ex. 2.

It appears to be undisputed that Plaintiff held a valid CPA license in the state of Oregon at the time of his use of the CPA designation in South Carolina on July 7, 2006.

As set forth in more detail below, the statutes at issue were amended effective June 18, 2008. Plaintiff filed his second action on January 16, 2009, in which he alleges that the statutes at issue, as amended, are unconstitutional because they prevent him as an accountant working in South Carolina from using "CPA (Inactive)" beside his name without first obtaining a reciprocity license from South Carolina. Plaintiff alleges in his Complaint and in his Verified Statement of Facts that, at all times relevant to the Complaint, his principal place of business was in South Carolina. Complaint ¶ 2; Plaintiff's Verified Statement of Facts (Document # 119-1) ¶ 7.[8] Nothing in the record indicates that Plaintiff has attempted to use the "CPA (Inactive)"[9] designation in South Carolina, and Defendants do not dispute that such use would be violative of the statutes at issue.

### C.     Statutes at Issue

Prior to June 16, 2008, the statutes at issue provided,

**SECTION 40-2-20**. Definitions.
(15) "Practice of accounting" means...
(b) using or assuming the title "Certified Public Accountant" or the abbreviation

---

[8]These documents are located in the second action.

[9]Including "inactive" in the use of the CPA designation very well could effect the analysis under the First Amendment claim if the speech was not inherently misleading. However, as discussed below, because the speech is inherently misleading, whether "inactive" is included is not material to the analysis.

"CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device tending to indicate that the person is a certified public accountant.

**SECTION 40-2-30**. Licensing or registration requirement; form for issuance of report by person other than CPA or PA; use of titles CPA and PA; exemption.
(A) It is unlawful for a person to engage in the practice of accountancy as regulated by this board without holding a valid license or registration...
(D) Only a person holding a valid license as a certified public accountant shall use or assume the title "Certified Public Accountant" or the abbreviation "CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device indicating that the person is a certified public accountant...
(G) Only a person or firm holding a valid license or registration issued under this chapter shall assume or use any title or designation likely to be confused with the titles "Certified Public Accountant" or "Public Accountant" or use a similar abbreviation likely to be confused with the abbreviations "CPA" or "PA."

S.C. Code Ann. § 40-2-20 and 40-2-30.

By 2008 Act No. 351, § § 1, 2, effective June 16, 2008, the statutes at issue were

amended to provide,

**SECTION 40-2-20.** Definitions.
(15) "Practice of accounting" means:
(b) using or assuming the title "Certified Public Accountant" or the abbreviation "CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device tending to indicate that the person is a certified public accountant.

**SECTION 40-2-30.** Licensing or registration requirement; form for issuance of report by person other than CPA or PA; use of titles CPA and PA; exemption.
(A) It is unlawful for a person to engage in the practice of accountancy as regulated by this board without holding a valid license or registration <u>or without qualifying for a practice privilege pursuant to Section 40-2-245</u>...
(D) Only a person holding a valid license as a certified public accountant <u>or qualifying for a practice privilege under Section 40-2-245</u> shall use or assume the title "Certified Public Accountant" or the abbreviation "CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device indicating that the person is a certified public accountant...
(G) Only a person or firm holding a valid license or registration issued under this chapter, <u>an individual qualifying for practice privileges under Section 40-2-245, or a firm exempt from the registration requirement by operation of subsection (I)</u> shall assume or use any title or designation likely to be confused with the titles "Certified Public Accountant" or "Public Accountant" or use a similar abbreviation likely to be

confused with the abbreviations "CPA" or "PA"...

S.C. Code Ann. § 40-2-20 and § 40-2-30 (as amended) (amendments emphasized).

Section 40-2-245, referenced in the amendments, provides,

(A) An individual whose principal place of business is outside this State is presumed to have qualifications substantially equivalent to this state's requirements and may exercise all the privileges of licensees of this State without the need to obtain a license under Section 40-2-35 if the individual:

> (1) holds a valid license as a certified public accountant from any state which requires, as a condition of licensure, that an individual:

>> (a) has at least 150 semester hours of college education including a baccalaureate or higher degree conferred by a college or university;
>> (b) achieves a passing grade on the Uniform Certified Public Accountant Examination; and
>> (c) possesses the appropriate experience pursuant to Section 40-2-35(4)(a); or

> (2) holds a valid license as a certified public accountant from any state that does not meet the requirements of subsection (A)(1) but such individual's CPA qualifications are substantially equivalent to those requirements. An individual who passed the Uniform CPA Examination and holds a valid license issued by any other state before January 1, 2012, may be exempt from the education requirement in subsection (A)(1)(a) for purposes of this item.

(B) Notwithstanding any other provision of law, an individual who offers or renders professional services, whether in person or by mail, telephone, or electronic means pursuant to this section is granted practice privileges in this State and no notice, fee, or other submission may be required of the individual. The individual is subject to the requirements of subsection (C).

(C) An individual licensee or holder of a permit to practice in another state exercising the privilege afforded under this section and the firm that employs that licensee simultaneously consents, as a condition of exercising this privilege:

> (1) to the personal and subject matter jurisdiction and disciplinary authority of the board;
> (2) to comply with the provisions of this section and the regulations promulgated pursuant to this section;
> (3) that in the event the license or permit to practice from the state of the individual's principal place of business is no longer valid, to cease offering or rendering professional services in this State individually and on behalf of a firm; and
> (4) to have an administrative notice of hearing served on the board in the individual's principal state of business in any action or proceeding by this board against the licensee.

(D) An individual who qualifies for practice privileges under this section who performs any of the following services for an entity with its home office in this State may only perform these services through a firm that has obtained a registration issued under Section 40-2-40:

> (1) a financial statement audit or other engagement to be performed in accordance with the Statements on Auditing Standards;
> (2) an examination of prospective financial information to be performed in accordance with the Statements on Standards for Attestation Engagements; or
> (3) an engagement to be performed in accordance with Public Company Accounting Oversight Board Auditing Standards.

(E) A licensee of this State offering or rendering services or using his or her CPA title in another state is subject to disciplinary action in this State for an act committed in another state for which the licensee would be subject to discipline for an act committed in the other state. The board shall investigate any complaint made by the board of accountancy of another state.

## D.     Discussion

### 1.     Amended Statutes

The thrust of the June 2008 amendments to the statutes at issue was to include a provision to allow CPAs licensed by a state outside of South Carolina to qualify for practice privileges under certain conditions outlined in § 40-2-245. In his second action, Plaintiff alleges that the statutes at issue, as amended, are unconstitutional because they prevent him from using "CPA (Inactive)" behind his name without first obtaining a reciprocity license. A review of § 40-2-245 reveals it is applicable only to individuals whose principal place of business is outside the state of South Carolina. Plaintiff has consistently maintained that at all times relevant to the Complaint, his principal place of business was in South Carolina. Complaint ¶ 2; Plaintiff's Verified Statement of Facts (Document # 119-1) ¶ 7. Because Plaintiff would not qualify for practice privileges under § 40-2-245, the analysis of the constitutionality of the statutes at issue as applied to Plaintiff is the same pre- and post-amendments. Therefore, for ease of reference, the undersigned will address Plaintiff's constitutional claims against

-12-

the statutes at issue pre-amendment, that is, at the time Plaintiff used the CPA designation after his name on the pleading in 2006, unless otherwise noted.

### 2. Equal Protection and Privileges and Immunities Clauses of the Fourteenth Amendment

Plaintiff alleges that Defendants' enforcement of the statutes at issue violate the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment. Plaintiff argues that statutes at issue are unconstitutional on their face and as applied to him. Specifically, Plaintiff argues that his right to equal protection of the laws is violated where the statutes at issue prevent him, a CPA licensed in another state, from using the CPA designation while allowing CPAs licensed in South Carolina to use the CPA designation. He also argues the classification these statutes draw between CPAs licensed by a state other than South Carolina and CPAs licensed by the state of South Carolina (by restricting the speech of one group but not the other) violates his fundamental right to travel.

The Supreme Court has recognized a fundamental right to interstate travel, United States v. Guest, 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), protected by both the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment. Selevan v. New Tork Thruway Authority, 584 F.3d 82, 99-100 (2d Cir. 2009) (citing Saenz v. Roe, 526 U.S. 489, 502-03, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999); Memorial Hospital v. Maricopa County, 415 U.S. 250, 269, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974)). The Fourteenth Amendment's Equal Protection Clause states, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause "limits all state action, prohibiting any state from denying a person equal protection through

the enactment, administration, or enforcement of its laws and regulations." <u>Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal</u>, 135 F.3d 275, 289 (4th Cir.1998). The Privileges and Immunities Clause provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. Amend. XIV, § 1. The Privileges and Immunities Clause of the Fourteenth Amendment "protects all citizens against abridgement by states of rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship." <u>Madden v. Kentucky</u>, 309 U.S. 83, 90, 60 S.Ct. 406, 84 L.Ed. 590 (1940). "A state law implicates the right to travel when it actually deters such travel . . . when impeding travel is its primary objective . . . or when it uses any classification which serves to penalize the exercise of that right." <u>Attorney General of New York v. Soto-Lopez</u>, 476 U.S. 898, 903, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986).

The Supreme Court has found on many occasions that the Privileges and Immunities Clause of the Fourteenth Amendment guarantees to the citizens of the nation that they may do business within a state on the same terms as the citizens of that state. <u>Toomer v. Witsell</u>, 334 U.S. 385, 396, 68 S.Ct. 1156 (1948) (citing <u>Ward v. Maryland</u>, 12 Wall. 418, 20 L.Ed. 449 (1870); <u>Chalker v. Birmingham & N.W.R. Co.</u>, 249 U.S. 522, 39 S.Ct. 366, 63 L.Ed. 748 (1919); <u>Shaffer v. Carter</u>, 252 U.S. 37, 52, 53, 40 S.Ct. 221, 225, 64 L.Ed. 445 (1920)). South Carolina's regulation of the practice of accounting does not violate the right to travel as protected by the Privileges and Immunities Clause of the Fourteenth Amendment because it does not infringe upon the right of a citizen of State A to conduct business in State B. "The right of federal citizenship as reflected in the 'right to travel' and as protected by [the Privileges and Immunities Clause of the Fourteenth Amendment] is not to be construed to mean that a citizen carries with him from state to state an absolute right of comity to

practice, not a 'common occupation,' but a profession, which is properly subject to state regulation, in any state to which he travels." Hawkins v. Moss, 503 F.2d 1171, 1178-79 (4th Cir. 1974).

In Hawkins, a New Jersey attorney relocated to South Carolina and sought to be admitted to the South Carolina bar "without submitting to the normal requirement of taking an examination in order to demonstrate his legal competency or proficiency." Id. at 1174. The Fourth Circuit noted that "[t]he exercise by a state of power to regulate reasonably the practice of law within its jurisdiction and to require of any applicant, whether a resident or a migrant, that he demonstrate sufficient proficiency in the law as a prerequisite to a license to practice, is, as we have seen perfectly permissible and represents no violation of this provision of the Fourteenth Amendment." Id. at 1179 (citing Kovrak v. Ginsburg, et al., Members of the Committee on Unauthorized Practice of the Law, 392 Pa. 143, 139 A.2d 889 (1958), app. dis. 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46; West Virginia State Bar v. Earley, 144 W.Va. 504, 109 S.E.2d 420, 430-431 (1959); State v. Rosenkrans, 30 R.I. 374, 75 A. 491 (1910), aff. 225 U.S. 698, 32 S.Ct. 840, 56 L.Ed. 1263).

Likewise, in the present case, the statutes at issue work to ensure that persons using the CPA designation or otherwise engaging in the practice of accounting within the state of South Carolina have demonstrated a sufficient proficiency in the profession of accounting, as defined by the state of South Carolina, by requiring those persons, whether a resident or a non-resident, to either obtain a license issued by the state of South Carolina or, under the 2008 amendments, qualify for a practice privilege. The statutes at issue in this case do not provide additional hurdles for non-residents to obtain a CPA license or validly use the CPA designation than those required of residents, nor do they otherwise penalize a person's exercise of his right to travel. Accordingly, Plaintiff's claim that the statutes at issue abridge his fundamental right to travel as that right is guaranteed by the Privileges

and Immunities Clause of the Fourteenth Amendment is without merit.

As noted above, Plaintiff also argues that the statutes at issue violate his equal protection rights because they restrict the speech[10] of CPAs licensed in another state by preventing them from using the CPA designation within the state of South Carolina (unless, under the 2008 amendments, they qualify for a practice privilege under § 40-2-245) while allowing CPAs licensed by the state of South Carolina to use the designation. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001).

Plaintiff appears to assert that he is similarly situated with people licensed as CPAs in states other than South Carolina. Generally speaking, people licensed as CPAs by a state other than South Carolina are treated differently than CPAs licensed by South Carolina under § 42-2-30. A CPA licensed by South Carolina can use the CPA designation and otherwise engage in the practice of accounting while a CPA licensed by another state cannot (unless, under the 2008 amendments, he qualifies for a practice privilege). However, Plaintiff fails to show that he has been treated differently from those with whom he is similarly situated, that is, those licensed as CPAs by a state other than South Carolina (with their principal place of business in South Carolina). Nevertheless, even if he has, the unequal treatment is not unconstitutional for the reasons discussed below.

Under an Equal Protection analysis, courts generally hold that "legislation is presumed to be

---

[10]As discussed below, South Carolina's restriction on the use of the CPA designation within South Carolina does not violate the First Amendment because such speech is misleading.

valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "The challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008) (citing City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)).

Plaintiff does not argue that CPAs or accountants qualify as a suspect class and the court has already found that the classification does not violate a fundamental right to travel. Thus, the classification drawn by the statutes at issue, between CPAs licensed by South Carolina and CPAs licensed by a state other than South Carolina, is presumed to be valid and will be sustained if it is rationally related to a legitimate state interest. Plaintiff bears the burden "to negate every conceivable basis which might support" the legislation. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Mitchell v. Comm'r of the Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir.1999). To be irrational in the Constitutional sense, "the relationship of the classification to its goal" must be "so attenuated as to render the distinction arbitrary." Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

The Fourth Circuit has held that states have an interest in assuring the public that only persons who have demonstrated their qualifications as CPAs and received a license can hold themselves out as certified public accountants. Accountant's Society of Virginia v. Bowman, 860 F.2d 602, 605 (4th Cir. 1988). Allowing only CPAs licensed by South Carolina (or, under the 2008 amendments, qualifying for a practice privilege) to use the CPA designation or otherwise engage in the practice of accounting within South Carolina is a rational means to this end. Plaintiff has failed to show

otherwise.  Accordingly, summary judgment in Plaintiff's favor is inappropriate.

### 3.	First Amendment Protections

Plaintiff next alleges that Defendants, by enforcing the statutes at issue, have violated his right to freedom of speech as guaranteed by the First Amendment of the United States Constitution. Defendants argue that Plaintiff's use of the CPA designation within South Carolina falls outside the protections of the First Amendment because it is false, deceptive, or misleading.

Defendants agree for purposes of these Motions that Plaintiff's use of the CPA designation is commercial speech.  See  Central Hudson Gas & Elec. Corp. v. Publ. Serv. Comm'n of New York, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (defining "commercial speech" as an "expression related solely to the economic interests of the speaker and its audience").  In Central Hudson, the Supreme Court developed a four-part inquiry for determining the constitutionality of a restriction on commercial speech relating to professional services.  First, the court must determine whether the commercial speech concerns lawful activity and is not misleading; then, whether the asserted governmental interest is substantial, whether the regulation directly advances the governmental interest asserted, and whether the regulation is not more extensive than necessary to serve that interest. Id.

"It is well-established that 'the party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" Edenfield v. Fane, 507 U.S. 761, 770, 123 L.Ed.2d 543, 113 S.Ct. 1792 (1993) (citing Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 71, n. 20, 103 S.Ct. 2875, 2883, n. 20, 77 L.Ed.2d 469 (1983);  Board of Trustees of State University of N.Y. v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989)). Defendants focus on the first factor of the

<u>Central Hudson</u> test by arguing that Plaintiff's use of the CPA[11] designation is misleading and, thus, not subject to First Amendment protection.

Following <u>Central Hudson</u>, the Court in <u>In re R.M.J.</u>, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982), discussed different gradations of misleading commercial speech and their effect on the <u>Central Hudson</u> analysis:

> Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive.

<u>In re R.M.J.</u>, 455 U.S. at 203, 102 S.Ct. at 937.

The Court elaborated on "inherently" misleading commercial speech in <u>Peel v. Attorney Disciplinary Commission</u>, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990). A statement is "inherently" misleading when, notwithstanding a lack of evidence of actual deception in the record, "the particular method by which the information is imparted to consumers is inherently conducive to deception and coercion." <u>Id.</u> (Marshall, J. and Brennan, J., concurring). Included in this definition is "commercial speech that is devoid of intrinsic meaning." <u>Id.</u> (Marshall, J. and Brennan, J., concurring). In her dissent, Justice O'Connor added that "inherently misleading" means "inherently likely to deceive the public." <u>Id.</u> at 121, 110 S.Ct. at 1702 (O'Connor, J., Rehnquist, C.J. and Scalia, J., dissenting). Citing <u>In re R.M.J.</u>, Justice Marshall noted that states may prohibit actually or inherently misleading commercial speech entirely. <u>Id.</u> at 111, 110 S.Ct. at 1697 (Marshall, J. and

---

[11] Again, the parties do not argue that inclusion of "inactive" changes the applicability of the statutory prohibition.

Brennan, J., concurring).

As set forth above, the Supreme Court has identified three types of misleading commercial speech: (1) inherently misleading, (2) actually misleading, and (3) potentially misleading. In the present case, Defendants have not argued that Plaintiff's use of the CPA designation on the Certificate of Service dated July 7, 2006, was actually misleading to any of the recipients.[12] Defendants argue that Plaintiff's use of the CPA designation is inherently misleading while Plaintiff argues that it is not misleading.

This court must examine the present facts for "particular content" or "method of the advertising" that suggests the speech is inherently misleading. At issue in this case is Plaintiff's use of "CPA" after his name. As discussed above, the abbreviation "CPA" stands for "Certified Public Accountant." Webster's Dictionary defines accountant as "one who is skilled in the practice of accounting or who is in charge of public or private accounts." Webster's Collegiate Dictionary (10th Edition). It further defines "Certified Public Accountant" as "an accountant who has met the requirements of a state law and has been granted a certificate." The specific context presented in this case is Plaintiff's use of "CPA" after his name on a legal pleading:

> Brad R. Johnson, Ph.D., J.D., C.P.A.
> [Street Address]
> Myrtle Beach, SC 29588
> [(843) xxx-xxxx][13]

Thus, following his name, Plaintiff includes designations of academic achievement, as well

---

[12]However, the court notes that Lewis Hall, who reported Plaintiff's use of the CPA designation to the Board, asked the Board whether Plaintiff was licensed as a CPA in South Carolina.

[13]The street address and phone number are redacted for privacy reasons.

as the CPA designation, indicating he is an accountant who has met the requirements of a state law and has been granted a certificate. Further, the communication includes a South Carolina address. The undersigned finds that use of a South Carolina address in connection with the CPA designation by itself[14] is inherently likely to mislead the public. It is inherently likely that the public will perceive a person listing South Carolina as his business address and using the CPA designation in association with that address to be an accountant who has met the requirements of and received a certificate from South Carolina. Considered in conjunction with the statutory scheme in South Carolina, its inherently misleading character is absolute.

Section 40-2-30(A) provides that "[i]t is unlawful for a person to engage in the practice of accountancy as regulated by this board without holding a valid license or registration;" § 40-2-30(D) provides that "[o]nly a person holding a valid license as a certified public accountant shall use or assume the title 'Certified Public Accountant' or the abbreviation 'CPA' or any other title, designation, words, letters, abbreviation, sign, card, or device indicating that the person is a certified public accountant;" and § 40-2-30(G) provides that "[o]nly a person or firm holding a valid license or registration issued under this chapter shall assume or use any title or designation likely to be confused with the titles 'Certified Public Accountant' or 'Public Accountant or use a similar abbreviation likely to be confused with the abbreviations 'CPA' or 'PA.'" Subsections (A), (D) and (G) require a person engaging in the practice of accounting, using the CPA designation or using any other designation likely to be confused with CPA to hold a "valid license." In § 40-2-20(10),

---

[14]Its misleading character is self-evident and does not require an evidentiary showing by Defendants. See Accountant's Society of Virginia v. Bowman, 860 F.2d 602, 605-06 (4th Cir. 1998) (citing Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 652-53, 105 S.Ct. 2265, 2282-83, 85 L.Ed.2d 652 (1985)).

"license" is defined as "authorization to practice as issued under this chapter."  Thus, per § 40-2-30 use of the CPA designation is regulated by the State of South Carolina by allowing only persons authorized to practice as certified public accountants under Chapter 2 of Title 40 of the South Carolina Code to use or assume the CPA designation.  Thus, considering the inherently misleading nature of the use of CPA with a South Carolina address, as discussed above, in conjunction with the state statute requiring licensure by South Carolina when used in South Carolina, the inherently misleading character is absolute.

Likewise, addressing the statutes as amended, the misleading character of the CPA usage is compounded.  Under the pre-amendment statutes, the use of "CPA" designated licensure in South Carolina, could be verified through the South Carolina Board of Accountancy.  Under the current statutory scheme, use means licensure in South Carolina if the individual's principal place of business is in South Carolina or licensure in another state if the individual's principal place of business is outside of South Carolina, provided the other state's requirements meet certain conditions or the individual's qualifications are substantially similar to the South Carolina's requirements. Here, the record establishes South Carolina as Plaintiff's principal place of business.  Thus, Plaintiff is required to be licensed in this state.  Under the facts presented, he is conveying to the public that he is licensed by this state.  Such conduct is inherently likely to mislead the public and is not entitled to First Amendment protection.  Plaintiff's facial challenge based on the First Amendment fails, as well, because use of the CPA designation when the person does not meet the requirements of the statute is inherently misleading.[15]

---

[15]Again, the analysis is limited to the facts and the arguments presented.

Accordingly, the court need not address the remaining three prongs of the test. Therefore, as to Plaintiff's cause of action for violation of the First Amendment, it is recommended that Plaintiff's Motion for Summary Judgment be denied and Defendants' Motion for Summary Judgment be granted.

### 4.    Dormant Commerce Clause

Finally, Plaintiff alleges that the statutes at issue are unconstitutional on their face and as applied to him because they violate the dormant Commerce Clause of the United States Constitution. Specifically, Plaintiff alleges that the practices and procedures of the Defendants in administering these statutes discriminate against interstate commerce, or, in the alternative, impose a burden on interstate commerce that is not justified by any benefit conferred by the statutes.

The Commerce Clause provides that "Congress shall have Power ... To regulate Commerce ... among the several States." U.S. Const. Art. I, § 8, cl. 3. This Clause is a grant of authority to Congress, not an explicit limitation on the power of the states. The Supreme Court has long recognized, however, that the Commerce Clause contains an implied limitation on the power of the states to interfere with or burden interstate commerce. See Cooley v. Board of Wardens, 53 U.S. 299, 12 How. 299, 13 L.Ed. 996 (1852). This implied limitation is known as the "dormant Commerce Clause" and it "'prohibits economic protectionism-that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" Hazardous Waste Treatment Council v. South Carolina, 945 F.2d 781, 789 (4th Cir.1991) (quoting New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 273-74, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988)). The dormant Commerce Clause is therefore a " 'substantive restriction on permissible state regulation' of interstate commerce." Id. (quoting Dennis v. Higgins, 498 U.S. 439, 447, 111 S.Ct. 865, 870, 112 L.Ed.2d 969 (1991); Hughes v. Oklahoma, 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250

(1979)).

> Determining whether a state law violates the dormant Commerce Clause involves a two-tiered analysis. [Brown v. Hovatter, 561 F.3d 357, 363 (4th Cir.2009).] The first inquiry is "whether the state law discriminates against interstate commerce." Id. (emphasis omitted). In this context, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Systems, Inc. v. Dep't of Env'tl Quality, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994) (emphasis added). If the state law is nondiscriminatory, a court asks whether it "unjustifiably burdens interstate commerce." Brown, 561 F.3d at 363. The law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

Johnson v. County of Horry, S.C., 360 Fed.Appx. 466, **5 (4th Cir. 2010).

Before engaging in this two-tiered analysis, however, the court must determine whether the statutes at issue even implicate the dormant Commerce Clause. In Brown v. Hovatter, 561 F.2d 357 (4th Cir. 2009), the Fourth Circuit analyzed whether a Maryland statute regulating the practice of mortuary science in Maryland violated the dormant Commerce Clause. Brown, 561 F.3d at 359. Before engaging in the two-tiered analysis, the court began by identifying the commerce implicated. Id. at 363. The court noted that "the Morticians Act regulates the practice of mortuary science in Maryland." Id. It recognized that,

> [t]he dormant Commerce Clause is implicated by burdens placed on the flow of interstate commerce-the flow of goods, materials, and other articles of commerce across state lines. See [Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Oregon, 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)] (stating that the dormant Commerce Clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce"); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 803, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976) (noting that it is "well established by the history of the Commerce Clause, that this Nation is a common market in which state lines cannot be made barriers to the free flow of both raw materials and finished goods in response to the economic laws of supply and demand"). And it is a trade barrier to the free flow of goods, materials, and other articles of commerce across state lines that violates the dormant Commerce Clause. The Clause does not purport to restrict or limit intrastate commerce, nor protect the participants in intrastate or interstate markets, nor the participants' chosen way of

doing business. See Exxon Corp. v. Governor of Md., 437 U.S. 117, 127, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) ("We cannot ... accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a retail market" or "particular interstate firms").

Id. at 364. The court concluded,

> In short, the plaintiffs are challenging the way Maryland authorizes them to do business within the State in a profession regulated by the State. Their complaints do not involve burdens placed on the interstate movement of goods, materials, or other articles of commerce, and the matters of which they complain-the manner of professional practice in Maryland-are not matters protected by the dormant Commerce Clause. As the Supreme Court stated in Exxon, "We cannot ... accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a retail market.... [T]he Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." Exxon, 437 U.S. at 127-28, 98 S.Ct. 2207.

Id. at 365.

Like the Maryland statute at issue in Brown, the statutes at issue in the present case are part of a professional licensing law. They regulate the manner of practicing accounting in South Carolina and do not regulate the interstate movement of goods, materials, or other articles of commerce. As such, the statutes at issue do not implicate the dormant Commerce Clause.

However, even if the dormant Commerce Clause is implicated, review of the statutes at issue here under the two-tiered analysis set forth above reveals that they are not in violation of the dormant Commerce Clause. The first inquiry is whether the state law discriminates against interstate commerce. The regulations are not discriminatory because they treat all individuals equally without regard to citizenship or location. Any person wishing to use the CPA designation or otherwise engage in the practice of accounting in South Carolina must obtain a license from the state of South Carolina (or, under the 2008 amendments, qualify for a practice privilege). Because the statutes at issue are nondiscriminatory, the court must determine whether it "unjustifiably burdens interstate commerce." Brown, 561 F.3d at 363. The law "will be upheld unless the burden imposed on

[interstate] commerce is clearly excessive in relation to the putative local benefits." <u>Pike v. Bruce Church, Inc.</u>, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). To the extent that the statutes at issue burden interstate commerce, the burden is not clearly excessive when compared to the legitimate interests of the state of South Carolina in protecting the public. Accordingly, summary judgment in Plaintiff's favor is inappropriate on this claim.

## V.  CONCLUSION

For the reasons discussed above,  in the first action, <u>Johnson v. Hall, et al</u>, 4:08-cv-2726-TLW-TER, it is recommended that Defendants' Motion to Dismiss (Document # 139) be denied, Plaintiff's Motion for Summary Judgment (Document # 154) be denied and Defendants' Motion for Summary Judgment (Document # 157) be granted as to Plaintiff's second cause of action for a First Amendment violation and denied without prejudice and with leave to refile as to Plaintiff's first and third causes of action.

In the second action, <u>Johnson v. Bryant, et al</u>, 4:09-0102-TLW-TER, it is recommended that Defendants' Motion to Dismiss (Document # 104) be denied, Plaintiff's Motion for Summary Judgment (Document # 119) be denied and Defendant's Motion for Summary Judgment (Document # 122) be granted as to Plaintiff's second cause of action for a First Amendment violation and denied without prejudice and with leave to refile as to Plaintiff's first and third causes of action.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 23, 2010
Florence, South Carolina

**The parties are directed to the important notice on the attached page.**