UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| BRAD R. JOHNSON, | ) | Civil Action No.: 4:08-cv-2726-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| LEWIS V. HALL; DORIS CUBIT, CPA; | ) | |
| A. ABLE, CPA; B. BAKER, CPA; and | ) | |
| C. CHARLIE, CPA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| BRAD R. JOHNSON, | ) | Civil Action No.: 3:09-cv-0102-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | |
| RANDALL BRYANT; DORIS CUBITT, | ) | |
| CPA; MALANE S. PIKE, ESQ.; MARK | ) | |
| T. HOBBS, CPA; GARY F. FORTE; | ) | |
| BOBBY R. CREECH, JR., CPA; DONALD | ) | |
| H. BURKETT, CPA; ANTHONY A. | ) | |
| CALLANDER, CPA; WENDELL | ) | |
| LUNDSFORD, PA; and JOHN F. CAMP; | ) | |
| CPA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

After obtaining his certified public accountant license from the State of Oregon, Plaintiff

worked for many years as a CPA in Oregon and Illinois before becoming an accounting professor

at Francis Marion University (FMU) in South Carolina in 2003.  In 2006, after having signed a

pleading in an unrelated lawsuit with his name followed by the designation "CPA," Plaintiff received

a notice from the South Carolina Department of Labor, Licensing and Regulation Office of the Board of Accountancy (the Board) that he may be in violation of South Carolina law prohibiting the practice of accounting without a valid South Carolina CPA license. The Board issued a "Notice to Cease and Desist Unlawful Practice" (the Notice) pursuant to Title 40 of the South Carolina Code of Laws.

Plaintiff filed these two actions challenging the constitutionality of (1) the statute defining the practice of accounting, S.C. Code Ann. § 40-2-20 (Definition Statute); and (2) the statute governing the licensing of and use of the title "CPA," S.C. Code Ann. § 40-2-30 (Licensing Statute) (collectively, "the statutes at issue"). The statutes at issue were amended in June 2008.

II.     PROCEDURAL BACKGROUND

Plaintiff's two pro se actions have been consolidated for purposes of discovery. In the lead case, 4:08-2726-TLW-TER (the first action), Plaintiff challenges the constitutionality of the statutes at issue prior to the June 2008 amendments. In the member case, 4:09-102-TLW-TER (the second action), Plaintiff challenges the constitutionality of the statutes at issue, as amended, under slightly different facts and with additional Defendants. In both cases, Plaintiff alleges causes of action for violations of his rights under the Equal Protection and Privileges and Immunities clauses of the Fourteenth Amendment, his First Amendment right to freedom of commercial speech and his rights under the dormant commerce clause. In both cases, he seeks money damages as well as a declaration that the statutes at issue are unconstitutional on their face and as applied to him.

Plaintiff previously filed a Motion for Summary Judgment as to each of his causes of action, which was denied by Order (Document # 208)[1] dated September 16, 2008. In the same Order, the

---

[1]Unless otherwise noted, cited documents are located in the first action.

district judge granted Defendants Motions for Summary Judgment as to Plaintiff's second cause of action for violation of his First Amendment right to freedom of commercial speech and denied the Motions for Summary Judgment as to Plaintiff's first and third causes of action without prejudice and with leave to refile.

Presently before the Court are Defendants' refiled Motions for Summary Judgment (Document # 204 in the first action and Document # 157 in the second action) as to Plaintiff's first and third causes of action. Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motions for Summary Judgment could result in the Motions being granted. Plaintiff filed Motions to Continue, arguing that he needed to conduct additional discovery before responding to the Motions for Summary Judgment. The Motions were denied without prejudice and Plaintiff was directed to address in his Responses to the Motions for Summary Judgment both the legal arguments raised by Defendants as well as the factual issues he felt needed to be developed to adequately respond.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because the pending Motions are dispositive, this Report and Recommendation is entered for review by the district judge.

## III.    FACTS

From 1982 until 2006, Plaintiff was licensed as a CPA by the state of Oregon. Plaintiff's Verified Statement of Facts (Verified Statement) (Document # 154-1) ¶ 2.[2]  Plaintiff applied for renewal to CPA-Inactive status on August 4, 2006. See Oregon Records  at 0008-0009 (attached as

_____

[2]Unless otherwise noted, cited documents are located in the first action.

-3-

Ex. 3 to Defendants' first Motion for Summary Judgment).[3]  From July of 1997 until January 7, 2005, Plaintiff was a resident of Illinois and was in the business of rendering tax consulting services as a CPA.  Id.  Plaintiff continued in the business of rendering tax consulting services as a CPA with his principal place of business in Illinois until September 1, 2006.  Id.  Since the 2003-04 academic year, Plaintiff has been an Associate Professor of Accounting at Francis Marion University, with a business address in Florence, South Carolina.  Verified Statement ¶ 2.  From June 2003 through January 2005, Plaintiff resided in North Carolina.  Id.  From January 7, 2005, through April 22, 2007, Plaintiff resided in South Carolina.  Id.  Plaintiff presently resides in North Carolina.  Id.  It is undisputed that Plaintiff is not licensed as a CPA by South Carolina.

On   July 11, 2006, Defendant Lewis V. Hall[4] informed Defendant Doris Cubitt, Administrator for the South Carolina Department of Labor, Licensing and Regulation Office of the Board of Accountancy (the Board)[5], that Plaintiff had signed pleadings in an unrelated lawsuit with

_____

[3]It appears that the State of Oregon requires CPA licensees to renew their licenses every two years.  Defendants do not dispute that Plaintiff maintained a valid, active Oregon CPA license until his licensure was changed to "inactive."

[4]Plaintiff voluntarily dismissed Hall as a Defendant during a hearing on March 16, 2010.

[5]In his Response to the present Motion, Plaintiff spends much of his discussion challenging the credibility of Defendants, especially regarding the existence of the Office of the Board of Accountancy, Defendant Cubitt's title and her authority to issue the Notice to Cease and Desist Unlawful Practice.  Response (Document # 244) pp. 6-49.  Importantly, it is outside the court's province to make credibility determinations at this stage in the litigation.  See Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir.2004).  Rather, the court must view the facts in the light most favorable to Plaintiff.  Id.  Furthermore, while these facts may be in dispute, they are not material to the issues before the Court, that is, the constitutionality of the statutes at issue.  Thus, even when viewing these facts in the light most favorable to Plaintiff and assuming that there is no such entity as the "Office of the Board of Accountancy," that Defendant Cubitt was not the "Administrator" of the "Office of the Board of Accountancy," and that Defendant Cubitt lacked the authority to issue the Notice to Cease and Desist Unlawful Practice, Plaintiff fails to establish that the statutes at issue are unconstitutional or that his constitutional rights were violated as

the designation "CPA" beside his name. Cubitt Aff. ¶ 2; Ex. 1 (attached as an Exhibit to Defendants'

first Motion for Summary Judgment). Defendant Hall noted that "your office told me Dr. Brad R.

Johnson is not a C.P.A. in South Carolina" and he requested that Defendant Cubitt "look into this."

Cubitt Aff. ¶ 3; Ex. 1. In response thereto, Defendant Cubitt concluded that Plaintiff was not a

licensed CPA in the State of South Carolina and issued a "Notice to Cease and Desist Unlawful

Practice" to the Plaintiff on July 28, 2006. Cubitt Aff. ¶ 4; Ex. 2-3.

> The "Notice to Cease and Desist Unlawful Practice" provided as follows:
>
> It having been brought to the attention of the Board of Accountancy (hereinafter referred to as "Board") that you may have violated, and may continue to violate, one or more of the provisions of S.C. Code of Laws § 40-2-10, et. seq. (1976, as amended), to wit:
>
>> Respondent is practicing as a CPA without possessing an active Certified Public Accountant license in the state of South Carolina. In a "Certificate Of Service" The respondent is listed as
>>      Brad R.Johnson, Ph.D, J.D., C.P.A. dated 7 July 2006.
>
> Pursuant to S.C. Code of Laws §40-1-100, et. seq. (1976, as amended) the Board has authority to "issue a cease and desist order prohibiting a person from violating the provisions of this chapter by engaging in the practice of accounting without a permit, registration, license, or certification." Therefore, pursuant to S.C. Code of Laws §40-1-100, et. seq. (1976, as amended), the Board does hereby give notice and issue its Order as follows:
>
> YOU ARE EXPRESSLY ORDERED to cease and desist from the performance of any act which would constitute the unlicensed practice of accounting.
>
> AND IT IS SO ORDERED.

Cubitt Aff. ¶ 4; Ex. 2.

It appears to be undisputed that Plaintiff held a valid CPA license in the state of Oregon at the

time of his use of the CPA designation in South Carolina on July 7, 2006.

────────────────

alleged.

As set forth in more detail below, the statutes at issue were amended effective June 18, 2008. Plaintiff filed his second action on January 16, 2009, in which he alleges that the statutes at issue, as amended, are unconstitutional because they prevent him as an accountant working in South Carolina from using "CPA (Inactive)" beside his name without first obtaining a reciprocity license from South Carolina. Plaintiff alleges in his Complaint and in his Verified Statement of Facts that, at all times relevant to the Complaint, his principal place of business was in South Carolina. Complaint ¶ 2; Plaintiff's Verified Statement of Facts (Document # 119-1) ¶ 7.[6] Nothing in the record indicates that Plaintiff has attempted to use the "CPA (Inactive)" designation in South Carolina, and Defendants do not dispute that such use would be violative of the statutes at issue.

## IV.    STATUTES AT ISSUE

Prior to June 16, 2008, the statutes at issue provided,

**SECTION 40-2-20**. Definitions.
(15) "Practice of accounting" means...
(b) using or assuming the title "Certified Public Accountant" or the abbreviation "CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device tending to indicate that the person is a certified public accountant.

**SECTION 40-2-30**. Licensing or registration requirement; form for issuance of report by person other than CPA or PA; use of titles CPA and PA; exemption.
(A) It is unlawful for a person to engage in the practice of accountancy as regulated by this board without holding a valid license or registration...
(D) Only a person holding a valid license as a certified public accountant shall use or assume the title "Certified Public Accountant" or the abbreviation "CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device indicating that the person is a certified public accountant...
(G) Only a person or firm holding a valid license or registration issued under this chapter shall assume or use any title or designation likely to be confused with the titles "Certified Public Accountant" or "Public Accountant" or use a similar abbreviation likely to be confused with the abbreviations "CPA" or "PA."

---

[6]These documents are located in the second action.

S.C. Code Ann. § 40-2-20 and 40-2-30.

By 2008 Act No. 351, § § 1, 2, effective June 16, 2008, the statutes at issue were amended to provide,

**SECTION 40-2-20.** Definitions.
(15) "Practice of accounting" means:
(b) using or assuming the title "Certified Public Accountant" or the abbreviation "CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device tending to indicate that the person is a certified public accountant.

**SECTION 40-2-30.** Licensing or registration requirement; form for issuance of report by person other than CPA or PA; use of titles CPA and PA; exemption.
(A) It is unlawful for a person to engage in the practice of accountancy as regulated by this board without holding a valid license or registration or without qualifying for a practice privilege pursuant to Section 40-2-245...
(D) Only a person holding a valid license as a certified public accountant or qualifying for a practice privilege under Section 40-2-245 shall use or assume the title "Certified Public Accountant" or the abbreviation "CPA" or any other title, designation, words, letters, abbreviation, sign, card, or device indicating that the person is a certified public accountant...
(G) Only a person or firm holding a valid license or registration issued under this chapter, an individual qualifying for practice privileges under Section 40-2-245, or a firm exempt from the registration requirement by operation of subsection (I) shall assume or use any title or designation likely to be confused with the titles "Certified Public Accountant" or "Public Accountant" or use a similar abbreviation likely to be confused with the abbreviations "CPA" or "PA"...

S.C. Code Ann. § 40-2-20 and § 40-2-30 (as amended) (amendments emphasized).

Section 40-2-245, referenced in the amendments, provides,

(A) An individual whose principal place of business is outside this State is presumed to have qualifications substantially equivalent to this state's requirements and may exercise all the privileges of licensees of this State without the need to obtain a license under Section 40-2-35 if the individual:
(1) holds a valid license as a certified public accountant from any state which requires, as a condition of licensure, that an individual:
(a) has at least 150 semester hours of college education including a baccalaureate or higher degree conferred by a college or university;
(b) achieves a passing grade on the Uniform Certified Public Accountant Examination; and

-7-

(c) possesses the appropriate experience pursuant to Section 40-2-35(4)(a); or

(2) holds a valid license as a certified public accountant from any state that does not meet the requirements of subsection (A)(1) but such individual's CPA qualifications are substantially equivalent to those requirements. An individual who passed the Uniform CPA Examination and holds a valid license issued by any other state before January 1, 2012, may be exempt from the education requirement in subsection (A)(1)(a) for purposes of this item.

(B) Notwithstanding any other provision of law, an individual who offers or renders professional services, whether in person or by mail, telephone, or electronic means pursuant to this section is granted practice privileges in this State and no notice, fee, or other submission may be required of the individual. The individual is subject to the requirements of subsection (C).

(C) An individual licensee or holder of a permit to practice in another state exercising the privilege afforded under this section and the firm that employs that licensee simultaneously consents, as a condition of exercising this privilege:

(1) to the personal and subject matter jurisdiction and disciplinary authority of the board;

(2) to comply with the provisions of this section and the regulations promulgated pursuant to this section;

(3) that in the event the license or permit to practice from the state of the individual's principal place of business is no longer valid, to cease offering or rendering professional services in this State individually and on behalf of a firm; and

(4) to have an administrative notice of hearing served on the board in the individual's principal state of business in any action or proceeding by this board against the licensee.

(D) An individual who qualifies for practice privileges under this section who performs any of the following services for an entity with its home office in this State may only perform these services through a firm that has obtained a registration issued under Section 40-2-40:

(1) a financial statement audit or other engagement to be performed in accordance with the Statements on Auditing Standards;

(2) an examination of prospective financial information to be performed in accordance with the Statements on Standards for Attestation Engagements; or

(3) an engagement to be performed in accordance with Public Company Accounting Oversight Board Auditing Standards.

(E) A licensee of this State offering or rendering services or using his or her CPA title in another state is subject to disciplinary action in this State for an act committed in another state for which the licensee would be subject to discipline for an act committed in the other state. The board shall investigate any complaint made by the board of accountancy of another state.

V.    **DISCUSSION**

A.    **Amended Statutes**

The thrust of the June 2008 amendments to the statutes at issue was to include a provision to allow CPAs licensed by a state outside of South Carolina to qualify for practice privileges under certain conditions outlined in § 40-2-245. In his second action, Plaintiff alleges that the statutes at issue, as amended, are unconstitutional because they prevent him from using "CPA (Inactive)" behind his name without first obtaining a reciprocity license. However, § 40-2-245 is applicable only to individuals whose principal place of business is outside the state of South Carolina, and Plaintiff has consistently maintained that at all times relevant to the Complaint, his principal place of business was in South Carolina. Complaint ¶ 2; Plaintiff's Verified Statement of Facts (Document # 119-1) ¶ 7. Because Plaintiff would not qualify for practice privileges under § 40-2-245, the analysis of the constitutionality of the statutes at issue as applied to Plaintiff is the same pre- and post-amendments. Therefore, for ease of reference, the undersigned will address Plaintiff's constitutional claims against the statutes at issue pre-amendment, that is, at the time Plaintiff used the CPA designation after his name on the pleading in 2006, unless otherwise noted.

B.    **Equal Protection and Privileges and Immunities Clauses of the Fourteenth Amendment**

Plaintiff alleges that Defendants' enforcement of the statutes at issue violate the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment. Plaintiff argues that the statutes at issue are unconstitutional on their face and as applied to him. Specifically, Plaintiff argues that his right to equal protection of the laws is violated where the statutes at issue

prevent him, a CPA licensed in another state, from using the CPA designation while allowing CPAs licensed in South Carolina to use the CPA designation. He also argues the classification these statutes draw between CPAs licensed by a state other than South Carolina and CPAs licensed by the state of South Carolina (by restricting the speech of one group but not the other) violates his fundamental right to travel.

The Supreme Court has recognized a fundamental right to interstate travel, United States v. Guest, 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), protected by both the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment. Selevan v. New York Thruway Authority, 584 F.3d 82, 99-100 (2d Cir. 2009) (citing Saenz v. Roe, 526 U.S. 489, 502-03, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999); Memorial Hospital v. Maricopa County, 415 U.S. 250, 269, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974)). The Fourteenth Amendment's Equal Protection Clause states, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause "limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations." Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 289 (4th Cir.1998). The Privileges and Immunities Clause provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. Amend. XIV, § 1. The Privileges and Immunities Clause of the Fourteenth Amendment "protects all citizens against abridgement by states of rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship." Madden v. Kentucky, 309 U.S. 83, 90, 60 S.Ct. 406, 84 L.Ed. 590 (1940). "A state law implicates the right to travel when it actually deters such travel . . . when

-10-

impeding travel is its primary objective . . . or when it uses any classification which serves to penalize the exercise of that right." Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986).

The Supreme Court has found on many occasions that the Privileges and Immunities Clause of the Fourteenth Amendment guarantees to the citizens of the nation that they may do business within a state on the same terms as the citizens of that state. Toomer v. Witsell, 334 U.S. 385, 396, 68 S.Ct. 1156 (1948) (citing Ward v. Maryland, 12 Wall. 418, 20 L.Ed. 449 (1870); Chalker v. Birmingham & N.W.R. Co., 249 U.S. 522, 39 S.Ct. 366, 63 L.Ed. 748 (1919); Shaffer v. Carter, 252 U.S. 37, 52, 53, 40 S.Ct. 221, 225, 64 L.Ed. 445 (1920)). South Carolina's regulation of the practice of accounting does not violate the right to travel as protected by the Privileges and Immunities Clause of the Fourteenth Amendment because it does not infringe upon the right of a citizen of State A to conduct business in State B. "The right of federal citizenship as reflected in the 'right to travel' and as protected by [the Privileges and Immunities Clause of the Fourteenth Amendment] is not to be construed to mean that a citizen carries with him from state to state an absolute right of comity to practice, not a 'common occupation,' but a profession, which is properly subject to state regulation, in any state to which he travels." Hawkins v. Moss, 503 F.2d 1171, 1178-79 (4th Cir. 1974).

In Hawkins, a New Jersey attorney relocated to South Carolina and sought to be admitted to the South Carolina bar "without submitting to the normal requirement of taking an examination in order to demonstrate his legal competency or proficiency." Id. at 1174. The Fourth Circuit noted that "[t]he exercise by a state of power to regulate reasonably the practice of law within its jurisdiction and to require of any applicant, whether a resident or a migrant, that he demonstrate

-11-

sufficient proficiency in the law as a prerequisite to a license to practice, is, as we have seen perfectly permissible and represents no violation of this provision of the Fourteenth Amendment." Id. at 1179 (citing Kovrak v. Ginsburg, et al., Members of the Committee on Unauthorized Practice of the Law, 392 Pa. 143, 139 A.2d 889 (1958), app. dis. 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46; West Virginia State Bar v. Earley, 144 W.Va. 504, 109 S.E.2d 420, 430-431 (1959); State v. Rosenkrans,30 R.I. 374, 75 A. 491 (1910), aff. 225 U.S. 698, 32 S.Ct. 840, 56 L.Ed. 1263).

Likewise, in the present case, the statutes at issue work to ensure that persons using the CPA designation or otherwise engaging in the practice of accounting within the state of South Carolina have demonstrated a sufficient proficiency in the profession of accounting, as defined by the state of South Carolina, by requiring those persons, whether a resident or a non-resident, to either obtain a license issued by the state of South Carolina or, under the 2008 amendments, qualify for a practice privilege. The statutes at issue in this case do not provide additional hurdles for non-residents to obtain a CPA license or validly use the CPA designation than those required of residents, nor do they otherwise penalize a person's exercise of his right to travel. Accordingly, Plaintiff's claim that the statutes at issue abridge his fundamental right to travel as that right is guaranteed by the Privileges and Immunities Clause of the Fourteenth Amendment is without merit.

As noted above, Plaintiff also argues that the statutes at issue violate his equal protection rights because they restrict the speech[7] of CPAs licensed in another state by preventing them from using the CPA designation within the state of South Carolina (unless, under the 2008 amendments, they qualify for a practice privilege under § 40-2-245) while allowing CPAs licensed by the state of

---

[7]The court has already ruled on this issue and found that South Carolina's restriction on the use of the CPA designation within South Carolina does not violate the First Amendment because such speech is misleading.

South Carolina to use the designation. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001).

Plaintiff appears to assert that he is similarly situated with people licensed as CPAs in states other than South Carolina. Generally speaking, people licensed as CPAs by a state other than South Carolina are treated differently than CPAs licensed by South Carolina under § 42-2-30. A CPA licensed by South Carolina can use the CPA designation and otherwise engage in the practice of accounting while a CPA licensed by another state cannot (unless, under the 2008 amendments, he qualifies for a practice privilege). However, Plaintiff fails to show that he has been treated differently from those with whom he is similarly situated, that is, those licensed as CPAs by a state other than South Carolina with their principal place of business in South Carolina. Nevertheless, even if he has, the unequal treatment is not unconstitutional for the reasons discussed below.

Under an Equal Protection analysis, courts generally hold that "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "The challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008) (citing City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)).

-13-

Plaintiff does not argue that CPAs or accountants qualify as a suspect class and the court has already found that the classification does not violate a fundamental right to travel. Thus, the classification drawn by the statutes at issue, between CPAs licensed by South Carolina and CPAs licensed by a state other than South Carolina, is presumed to be valid and will be sustained if it is rationally related to a legitimate state interest. Plaintiff bears the burden "to negate every conceivable basis which might support" the legislation. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Mitchell v. Comm'r of the Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir.1999). To be irrational in the Constitutional sense, "the relationship of the classification to its goal" must be "so attenuated as to render the distinction arbitrary." Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

The Fourth Circuit has held that states have an interest in assuring the public that only persons who have demonstrated their qualifications as CPAs and received a license can hold themselves out as certified public accountants. Accountant's Society of Virginia v. Bowman, 860 F.2d 602, 605 (4th Cir. 1988). Allowing only CPAs licensed by South Carolina (or, under the 2008 amendments, qualifying for a practice privilege) to use the CPA designation or otherwise engage in the practice of accounting within South Carolina is a rational means to this end. Therefore, summary judgment is appropriate on this issue.

C.     Dormant Commerce Clause

Plaintiff also alleges that the statutes at issue are unconstitutional on their face and as applied to him because they violate the dormant Commerce Clause of the United States Constitution. Specifically, Plaintiff alleges that the practices and procedures of the Defendants in administering these statutes discriminate against interstate commerce, or, in the alternative, impose a burden on

-14-

interstate commerce that is not justified by any benefit conferred by the statutes.

The Commerce Clause provides that "Congress shall have Power ... To regulate Commerce ... among the several States." U.S. Const. Art. I, § 8, cl. 3. This Clause is a grant of authority to Congress, not an explicit limitation on the power of the states. The Supreme Court has long recognized, however, that the Commerce Clause contains an implied limitation on the power of the states to interfere with or burden interstate commerce. See Cooley v. Board of Wardens, 53 U.S. 299, 12 How. 299, 13 L.Ed. 996 (1852). This implied limitation is known as the "dormant Commerce Clause" and it "'prohibits economic protectionism-that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.' " Hazardous Waste Treatment Council v. South Carolina, 945 F.2d 781, 789 (4th Cir.1991) (quoting New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 273-74, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988)).  The dormant Commerce Clause is therefore a "'substantive restriction on permissible state regulation' of interstate commerce." Id. (quoting Dennis v. Higgins, 498 U.S. 439, 447, 111 S.Ct. 865, 870, 112 L.Ed.2d 969 (1991); Hughes v. Oklahoma, 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979)).

> Determining whether a state law violates the dormant Commerce Clause involves a two-tiered analysis. [Brown v. Hovatter, 561 F.3d 357, 363 (4th Cir.2009).] The first inquiry is "whether the state law discriminates against interstate commerce." Id. (emphasis omitted). In this context, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Systems, Inc. v. Dep't of Env'tl Quality, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)  (emphasis added). If the state law is nondiscriminatory, a court asks whether it "unjustifiably burdens interstate commerce." Brown, 561 F.3d at 363. The law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

Johnson v. County of Horry, S.C., 360 Fed.Appx. 466, **5 (4th Cir. 2010).

Before engaging in this two-tiered analysis, however, the court must determine whether the statutes at issue even implicate the dormant Commerce Clause.  In Brown v. Hovatter, 561 F.3d 357 (4th Cir. 2009), the Fourth Circuit analyzed whether a Maryland statute regulating the practice of mortuary science in Maryland violated the dormant Commerce Clause.  Brown, 561 F.3d at 359.  Before engaging in the two-tiered analysis, the court began by identifying the commerce implicated.  Id. at 363.  The court noted that "the Morticians Act regulates the practice of mortuary science in Maryland."  Id.  It recognized that,

> [t]he dormant Commerce Clause is implicated by burdens placed on the flow of interstate commerce-the flow of goods, materials, and other articles of commerce across state lines. See [Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Oregon, 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)] (stating that the dormant Commerce Clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce"); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 803, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976)  (noting that it is "well established by the history of the Commerce Clause, that this Nation is a common market in which state lines cannot be made barriers to the free flow of both raw materials and finished goods in response to the economic laws of supply and demand"). And it is a trade barrier to the free flow of goods, materials, and other articles of commerce across state lines that violates the dormant Commerce Clause. The Clause does not purport to restrict or limit intrastate commerce, nor protect the participants in intrastate or interstate markets, nor the participants' chosen way of doing business. See Exxon Corp. v. Governor of Md., 437 U.S. 117, 127, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) ("We cannot ... accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a retail market" or "particular interstate firms").

Id. at 364.  The court concluded,

> In short, the plaintiffs are challenging the way Maryland authorizes them to do business within the State in a profession regulated by the State. Their complaints do not involve burdens placed on the interstate movement of goods, materials, or other articles of commerce, and the matters of which they complain-the manner of professional practice in Maryland-are not matters protected by the dormant Commerce Clause. As the Supreme Court stated in Exxon, "We cannot ... accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a retail market.... [T]he Clause protects the

-16-

interstate market, not particular interstate firms, from prohibitive or burdensome regulations." Exxon, 437 U.S. at 127-28, 98 S.Ct. 2207.

Id. at 365.

Like the Maryland statute at issue in Brown, the statutes at issue in the present case are part of a professional licensing law. They regulate the manner of practicing accounting in South Carolina and do not regulate the interstate movement of goods, materials, or other articles of commerce. As such, the statutes at issue do not implicate the dormant Commerce Clause.

However, even if the dormant Commerce Clause is implicated, application of the two-tiered analysis set forth above reveals that they are not in violation of the dormant Commerce Clause. The first inquiry is whether the state law discriminates against interstate commerce. The regulations are not discriminatory because they treat all individuals equally without regard to citizenship or location. Any person wishing to use the CPA designation or otherwise engage in the practice of accounting in South Carolina must obtain a license from the state of South Carolina, or, under the 2008 amendments, qualify for a practice privilege. Also, the statutes at issue do not "unjustifiably burden[] interstate commerce." Brown, 561 F.3d at 363. The law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). To the extent that the statutes at issue burden interstate commerce, the burden is not clearly excessive when compared to the legitimate interests of the state of South Carolina in protecting the public. Accordingly, summary judgment is appropriate on this claim.

## VI.    CONCLUSION

For the reasons discussed above, in the first action, Johnson v. Hall, et al, 4:08-cv-2726-

-17-

TLW-TER, it is recommended that Defendants' Motion for Summary Judgment (Document # 204) be granted.  In the second action, <u>Johnson v. Bryant, et al</u>, 4:09-0102-TLW-TER, it is recommended that Defendant's Motion for Summary Judgment (Document # 157) be granted.

 s/Thomas E. Rogers, III_____
Thomas E. Rogers, III
United States Magistrate Judge

August 9, 2011
Florence, South Carolina

**The parties are directed to the important notice on the attached page.**

-18-